Justina K. Sessions, State Bar No. 270914
Email: jsessions@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2099

*Counsel for Cross-Movant and*
*Respondent Snap Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| META PLATFORMS, INC.,<br><br>    Movant,<br><br>      v.<br><br>SNAP INC.,<br><br>    Cross-Movant and Respondent. | Case No. 2:22-mc-00146-PA-AGR<br><br>**SNAP'S OPPOSITION TO META'S MOTION TO TRANSFER META'S MOTION TO COMPEL AND SNAP'S CROSS-MOTION TO QUASH**<br><br>Underlying action in the United States District Court for the District of Columbia, No. 1:20-cv-03590-JEB<br><br>Fact Discovery Cutoff: May 22, 2023<br>Expert Discovery Cutoff: January 5, 2024<br>Pretrial Conference and Trial Date: TBD<br><br>Hearing Date: September 13, 2022<br>Hearing Time: 11 a.m.<br>Magistrate Judge Alicia G. Rosenberg<br><br>DISCOVERY MATTER |

1

# TABLE OF CONTENTS

2
**Page**

3 INTRODUCTION ................................................................................................ 1

4 BACKGROUND ................................................................................................. 3

5        A.    The *Klein* and *FTC* Actions Involve Similar Issues. ............................. 3

6        B.    Meta's Subpoenas in *Klein* and *FTC* Substantially Overlap. ................. 4

7        C.    The *Klein* and *FTC* Motions Are Related. ............................................. 7

8 LEGAL STANDARD ......................................................................................... 8

9 ARGUMENT ....................................................................................................... 9

10 I.    META CANNOT SHOW THE REQUIRED "EXCEPTIONAL
CIRCUMSTANCES." .............................................................................. 9

11

12 II.    THE BURDEN TO THE JUDICIARY AND SNAP FROM
TRANSFERING OUTWEIGHS ANY PURPORTEDLY

13       EXCEPTIONAL CIRCUMSTANCES. ........................................... 15

14 CONCLUSION .................................................................................................. 17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bell v. ATH Holding Co., LLC,*
    2018 U.S. Dist. LEXIS 117507 (E.D. Pa. July 16, 2018)......................12, 16

*Bright House Networks, LLC v. MarkMonitor, Inc.,*
    2020 WL 4464882 (N.D. Cal. Aug. 3, 2020)................................................16

*CMB Expert, LLC v. Atteberry,*
    2014 U.S. Dist. LEXIS 72029 (N.D. Tex. May 27, 2014)....................15, 17

*In re Bestwall LLC,*
    2021 U.S. Dist. LEXIS 102452 (D. Del. June 1, 2021) ...............................13

*In re Subpoenas to Glob. Music Rights,*
    2019 U.S. Dist. LEXIS 235809 (C.D. Cal. Jan. 18, 2019) ..........................14

*Isola USA Corp. v. Taiwan Union Tech. Corp.,*
    2015 U.S. Dist. LEXIS 140416 (D. Mass. June 18, 2015),
    *report & recommendation adopted,*
    2015 U.S. Dist. LEXIS 142797 (D. Mass. Aug. 27, 2015)....................12, 13

*Kuznyetsov v. W. Penn Allegheny Health Sys.*
    *(In re Am. Nurses Ass'n),*
    788 F. Supp. 2d 444 (D. Md. 2011) .......................................................16, 17

*Le v. Zuffa, LLC,*
    2017 WL 11632246 (C.D. Cal. Mar. 17, 2017) ............................................12

*Olson v. Sprint Spectrum L.P.,*
    2008 WL 11506695 (W.D. Wash. Apr. 16, 2008)..................................13, 14

*Sines v. Darling Ingredients, Inc.,*
    2022 U.S. Dist. LEXIS 88397 (D.N.M. May 17, 2022) ..............................17

*Woods ex rel. United States v. SouthernCare, Inc.,*
    303 F.R.D. 405 (N.D. Ala. 2014)...........................................................10, 13

## RULES

Fed. R. Civ. P. 45...................................................................................*passim*

C.D. Cal. L.R. 37 .........................................................................................9

C.D. Cal. L.R. 45 .........................................................................................9

ii

CASE NO. 22-mc-00146-PA-AGR

**INTRODUCTION**

The Court should deny Meta Platform, Inc.'s ("Meta") motion to transfer one of two related cases pending before this Court.  Meta has served two technically separate but highly duplicative subpoenas on Snap Inc. ("Snap"), a non-party to the two underlying actions.  The Court is currently scheduled to hear two sets of motions concerning these subpoenas:  a motion to compel by Meta and a cross-motion to quash by Snap in Case No. 2:22-mc-00146-PA-AGR (together, the "*FTC* Motions"), as well as another motion to compel by Meta and another motion to quash by Snap in related Case No. 2:22-mc-00147-PA-AGR (together, the "*Klein* Motions").  The parties' arguments are substantially the same across the two sets of motions.  Yet, Meta seeks to transfer one (and only one) set of the motions under Federal Rule of Civil Procedure 45(f).

In other words, Meta wants to transfer the motions concerning its subpoena in one case to the underlying court in the District of Columbia, but Meta does *not* want to transfer the motions concerning its subpoena in the other case to the other underlying court in the Northern District of California.  This is so even though all the motions are highly duplicative and concern nearly identical issues and arguments.  Meta is thus trying to get two bites at the apple—if it can convince *either* court to compel Snap to produce documents responsive to its subpoenas, Snap will be forced to comply.  Snap should not have to win the same motions twice in order to protect itself from the burden and invasiveness of Meta's abusive subpoenas.  Nor should the judiciary be forced to rule on substantially similar motions twice.

Meta's motion should be denied for the following reasons.

*First*, a motion to transfer requires "exceptional circumstances," which Meta cannot establish.  *See* Fed. R. Civ. P. 45(f).  As an initial matter, Meta's arguments in favor of transferring are all pretextual and therefore should be discounted.  Although the reasons asserted by Meta in support of transferring the *FTC* Motions also apply to the *Klein* Motions, Meta seeks to transfer only the *FTC* Motions.  Because Meta's

proffered reasons for transfer cannot explain this inconsistency, Meta must have other, purely self-serving reasons that it cannot propound as grounds for transfer.

Further, none of Meta's proffered reasons establishes exceptional circumstances. This is the court empowered under the Federal Rules of Civil Procedure to rule on the parties' motions. Rule 45(d) provides that "[t]he court for the district where compliance is required"—not the issuing court—may "quash or modify" a subpoena. This is the court of the district where compliance is required pursuant to Meta's subpoenas, and this is the district where Snap is based. Meta's lead argument to flee this district is that transfer is necessary to avoid the possibility of inconsistent rulings on hypothetical disputes that may never materialize. Such a speculative benefit does not warrant transfer. Meta supplements this argument by noting that the judge overseeing the underlying action is more familiar with the underlying action than is this Court—a circumstance that is always true (and thus not exceptional) when a non-party subpoena is issued by a court other than the court where compliance is required. Finally, Meta points to a two-sentence ruling issued by the judge overseeing the underlying action as evidence that he decided one of the many issues before this Court. But the issues are distinct, so Meta's point falls flat. Because none of these circumstances are exceptional, the Court should reject Meta's motion for failure to meet its burden. *See* Argument § I below.

*Second*, even if Meta could meet its burden (which it cannot), transfer would not be justified because splitting up the *FTC* and *Klein* Motions will burden the judiciary and Snap with inefficiencies, unfairness, and potentially inconsistent rulings. This Court is the only court that can hear the heavily overlapping *FTC* and *Klein* Motions together. Because this Court will have to decide the *Klein* Motions either way, it would be inefficient to have another court wade through the same issues as well. Snap would also be burdened by having to press the same arguments in two courts. Moreover, Meta has nothing to lose and everything to gain from splitting its motions to compel. Since the materials sought by its subpoenas overlap so

significantly, Meta will get two bites at the apple—an outcome that is clearly unfair to Snap. For these reasons, even if there were exceptional circumstances (and there are not), the burdens imposed on the judiciary and Snap by transfer outweigh any purported benefits of transfer because the burdens are based on real disputes currently being litigated, whereas the supposed benefits are pretextual and based on hypothetical disputes that may never be litigated. *See* Argument § II below.

## BACKGROUND

### A.     The *Klein* and *FTC* Actions Involve Similar Issues.

The *Klein* and *FTC* Motions concern two underlying actions. In *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD (N.D. Cal.) ("*Klein*"), a proposed class of consumers (the "Consumer Plaintiffs") and a proposed class of advertisers (the "Advertiser Plaintiffs") are suing Meta for violating the Sherman Antitrust Act. The Consumer Plaintiffs allege that Meta "consistently and intentionally deceived consumers about the data protections it provided to its users, in order to diminish competition and obtain dominance in markets characterized by strong network effects and high barriers to entry." *FTC* Subpoena Dkt. 8-3 ¶ 3.[1] The Advertiser Plaintiffs allege that Meta "devised, executed, and reaped the benefits of a scheme to unlawfully monopolize the market for social advertising" through acquisitions of rivals, exclusion of competing or potentially competing developers from its platform, and agreements to divide markets with Google. *FTC* Subpoena Dkt. 8-4 ¶¶ 1, 5, 6, 16.

In *Federal Trade Commission v. Meta Platforms, Inc.*, Case No. 1:20-cv-03590-JEB (D.D.C.) ("*FTC*"), the FTC alleges that Meta "has maintained its monopoly position" by "systematically track[ing] potential rivals and acquir[ing]

---

[1] Citations to "*FTC* Subpoena Dkt." refer to the docket in *Meta v. Snap*, Case No. 2:22-mc-00146-PA-AGR (C.D. Cal.). Citations to "*Klein* Subpoena Dkt." refer to the docket in *Meta v. Snap*, Case No. 2:22-mc-00147-PA-AGR (C.D. Cal.). Citations to "*FTC* Joint Stip." refer to *FTC* Subpoena Dkt. 1-1. Citations to "*Klein* Joint Stip." refer to *Klein* Subpoena Dkt. 1-1. Citations to "Memo" refer to *FTC* Subpoena Dkt. 41-2.

companies that it viewed as serious competitive threats" in violation of the Sherman Antitrust Act. *FTC* Subpoena Dkt. 8-6 ¶ 1.

Meta has acknowledged many of the similarities between *FTC* and *Klein*:

- "The allegations in the *FTC* and *Klein* cases regarding market definition and product quality raise similar, albeit not identical, discovery needs." *Klein* Joint Stip. at 79.

- "Documents produced in the *FTC* action regarding Snap's view of the competitive landscape and its competition with Meta specifically . . . go to the core of the [*Klein*] case." *Klein* Joint Stip. at 80.

- "Like the FTC, [Consumer] Plaintiffs claim that Meta's conduct suppressed competition along 'non-price attributes such as quality' and that but for this suppression, users would have enjoyed higher-quality products with better privacy features." *Id.*

- "According to the FTC, Meta's alleged [personal social networking services] monopoly 'suppresses meaningful competition for the sale of advertising,'" *FTC* Joint Stip. at 106, and "Advertiser Plaintiffs claim Meta is a monopolist in the advertising sub-market of 'social advertising,'" *Klein* Joint Stip. at 11.

**B.     Meta's Subpoenas in *Klein* and *FTC* Substantially Overlap.**

Meta served Snap with a subpoena in *Klein* and a subpoena in *FTC* on the same day. The parties have since negotiated the two subpoenas together—an "efficiency-enhancing practice," according to Meta, *see Klein v. Meta*, Case No. 3:20-cv-08570-JD (N.D. Cal.), Dkt. 319 at 6.

Each subpoena demands all documents produced in the other litigation: the *Klein* subpoena seeks all documents that Snap produces in the *FTC* action, and the *FTC* subpoena seeks all documents that Snap produces in *Klein*. *FTC* Subpoena Dkt. 8-1, RFP 61; *FTC* Subpoena Dkt. 8-2, RFP 3. Meta voluntarily "dropp[ed]" various overlapping requests from the *Klein* subpoena only because it "expects Snap

to produce those documents in [*Klein*] pursuant to RFP 3, requesting the documents produced in the *FTC* case." *FTC* Subpoena Dkt. 8-13 at 2.

The subpoenas call for substantially overlapping material.  In addition to encompassing one another, many of the specific RFPs at issue call for the same material or material on substantially overlapping topics.  For example, Meta's *Klein* RFP 20 demands:

- "Documents sufficient to identify the importance of Your Privacy Policies, Privacy Practices, and Ad Load to users of Your Products." *FTC* Subpoena Dkt. 8-2; *Klein* Joint Stip. at 8.

Meta's *FTC* subpoena includes at least four requests that also relate to the importance of, and competition with respect to, these same policies and practices:

- "Documents sufficient to identify . . . any changes to each Product, including changes to Your Privacy Policies, Privacy Practices, and Ad Load, You have made at least partly in response to competition or potential competition with any company other than Meta." *FTC* Subpoena Dkt. 8-1, RFP 2(e).
- "All Documents or data that refer or relate to the effect of changes in Ad Load, ad targeting capabilities, ad quality, Privacy Policies or Privacy Practices (including public statements about those practices or policies), or data storage and protection on users, including, but not limited to, user activity, sentiment, engagement, growth, retention, Churn Rate, attrition, switching, Diversion, or substitution." *FTC* Subpoena Dkt. 8-1, RFP 12.
- "Documents sufficient to identify the following policies and practices and the reasons for changes to them over time:  the Company's Privacy Policies and Privacy Practices, data protection practices and policies, practices and policies for reducing Spam, practices and policies for retention of user or non-user data, and practices and policies relating to Ad Load; including without limitation Documents sufficient to identify what data relating to Your users You share with third parties, the identity of those third parties, and the

5

consideration You received in exchange thereof." *FTC* Subpoena Dkt. 8-1, RFP 13; *FTC* Joint Stip. at 14-15.

• "All Documents relating to competition between You and Your actual or potential competitors, including Meta, with respect to Ad Load, Privacy Policies and Privacy Practices, and data collection and use practices or policies." *FTC* Subpoena Dkt. 8-1, RFP 14; *FTC* Joint Stip. at 15.

As another example, *Klein* RFP 22 demands:

• "Documents sufficient to identify Your rationale for paying or not paying Your users or customers money in exchange for their use of Your Products." *FTC* Subpoena Dkt. 8-2.

Meta's *FTC* requests ask for the same type of information, just framed slightly differently:

• "All Documents referring or relating to how pricing for Your Snapchat Product is set, including all Documents sufficient to identify why certain Products are offered for free." *FTC* Subpoena Dkt. 8-1, RFP 46; *FTC* Joint Stip. at 16.

• "Documents sufficient to show how You determined Your pricing mechanism for providing users with monetary compensation to post content using the Spotlight feature on Snapchat." *FTC* Subpoena Dkt. 8-1, RFP 47.

Meta's *Klein* RFP 41 demands:

• "Documents sufficient to show the effect of Meta's interactions with Cambridge Analytica and Meta's public representations concerning Cambridge Analytica on user activity, sentiment, engagement, growth, retention, Churn Rate, attrition, switching, Diversion, or substitution related to Your Products." *FTC* Subpoena Dkt. 8-2.

Meta's *FTC* RFPs subsume its *Klein* RFP:

• "All Documents referring or relating to competition with Meta, the substitutability of Your Products with Meta's Products, Diversion of users

6

1   and Advertisers between Your Products and Meta's Products, or comparisons
2   between Your Products and Meta's Products."  *FTC* Subpoena Dkt. 8-1,
3   RFP 4.

4   • "Documents or data concerning the time spent on each Product by users who
5   use any of Your competitors' Products, including any studies or analyses on
6   the effect of Outages and changes in price and quality on user Diversion."
7   *FTC* Subpoena Dkt. 8-1, RFP 10; *FTC* Joint Stip. at 18.

8   Thus, although sometimes phrased differently, the *FTC* and *Klein* subpoenas
9   seek information on substantially overlapping topics and in several instances seek the
10  same materials and analyses.  Moreover, any semblance of distinctness is eviscerated
11  because, as explained above, each subpoena demands the production of all documents
12  produced in response to the other subpoena.

13      **C.      The *Klein* and *FTC* Motions Are Related.**

14  On July 1, 2022, Meta declared impasse in negotiations with Snap and asked
15  for Snap's consent to Meta's motion to transfer the *FTC* Motions to Judge Boasberg
16  in the District of Columbia, the judge overseeing the *FTC* action.  *FTC* Subpoena
17  Dkt. 40-8.  Snap declined for many of the reasons stated herein.  Although Snap
18  preferred to make a unified Joint Stipulation concerning both the *FTC* and *Klein*
19  subpoenas, Meta insisted on filing two separate Joint Stipulations for the *FTC* and
20  *Klein* Motions.  As a result, each Joint Stipulation contains a motion to compel by
21  Meta and a motion to quash by Snap.  Consistent with the requirements of Rule 45,
22  both Joint Stipulations were filed in the Central District of California, the district
23  where compliance is required.

24  The Joint Stipulations are quite repetitive, with both parties having copied and
25  pasted large swaths of one Joint Stipulation into the other.  This is because the Joint
26  Stipulations involve the same legal and factual issues.  Both involve the same
27  provisions of Rule 45, specifically 45(d)(3)(A), 45(d)(3)(B)(ii), and 45(d)(3)(C).
28  Snap argues that both subpoenas should be quashed for the same reasons:  they are

7

unduly burdensome and require production of vast troves of incredibly sensitive confidential commercial information for which Meta has no substantial need.  Meta justifies its demands in both actions by arguing that Snap is a significant competitor and alleged victim of Meta's conduct.  The parties' legal arguments are almost identical across the two motions; they differ across motions primarily as to the burden, breadth, and relevance of specific individual requests.  However, as provided above, the specific individual requests in the two subpoenas ask for the same type of material.

The parties' arguments regarding remedies are also substantially the same across the motions.  Snap argues the subpoenas should be quashed and Meta should be ordered to craft and serve more narrowly tailored requests; Meta argues that doing so would be "wasteful" in both cases.  Snap argues that the only way to adequately protect the most sensitive information Meta demands from Snap would be to ensure that Meta's insiders cannot view it with the creation of an "outside counsel's eyes only" designation; Meta argues in both cases that this Court lacks the power to impose such conditions.  Finally, Snap argues that any order requiring compliance must include compensation for Snap's costs of compliance.  Meta argues in both cases that this request is premature, and that Snap should be considered akin to a party because Snap would benefit if either plaintiff obtained the (substantially similar) injunctive relief they seek.

On August 9, 2022, Meta filed its motion to transfer.  *FTC* Subpoena Dkt. 40.

On August 10, 2022, Snap requested to have the two subpoena actions related, *Klein* Subpoena Dkt. 25, which the Court granted the next day, *Klein* Subpoena Dkt. 27.

## LEGAL STANDARD

Rules 45(d)(2) and 45(d)(3) empower the court in the district where compliance is required to resolve motions to compel compliance with, quash, or modify a subpoena.  "When the court where compliance is required did not issue the subpoena, it *may* transfer a motion under this rule to the issuing court if the person subject to the

subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f) (emphasis added). "[T]he proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should *not* be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Committee Notes on Rules—2013 Amendment (emphasis added). If there are no exceptional circumstances, then the motion should be denied. *See id.* If there are exceptional circumstances, then the Court evaluates whether those circumstances outweigh the other interests at stake. *See id.* ("Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.").

## ARGUMENT

The Court should deny Meta's motion to transfer for two reasons. *First*, Meta's arguments cannot establish that exceptional circumstances require transfer. § I below. *Second*, even assuming Meta could show exceptional circumstances (which it cannot), the burden on the judiciary and Snap would outweigh the purported benefits of transfer because splitting up the related *FTC* and *Klein* Motions would be inefficient, unfair, and risk inconsistent rulings. § II below.[2]

## I.    META CANNOT SHOW THE REQUIRED "EXCEPTIONAL CIRCUMSTANCES."

As an initial matter, the Court should heavily discount Meta's arguments because they are pretextual. Meta seeks to transfer the *FTC* Motions to the underlying

---

[2] Meta's motion to transfer also violates Civil Local Rule 45-1, which provides that "[e]xcept with respect to motions transferred to this district pursuant to F.R.Civ.P. 45(f), L.R. 37 applies to all motions relating to discovery subpoenas served on (a) parties and (b) non-parties represented by counsel." Although Meta's motion to transfer is clearly a "motion[] relating to discovery subpoenas," Meta failed to follow the joint stipulation process required by Civil Local Rule 37. Meta's failure is an independent basis to deny its motion to transfer. *See* L.R. 37-2.4 ("The Court will not consider any discovery motion in the absence of a joint stipulation or" circumstances not applicable here.).

action in the District of Columbia, which is before Judge Boasberg, but does not seek to transfer the *Klein* Motions to the underlying action in the Northern District of California, which is before Judge Donato.  This is despite the fact the same purported reasons would support transferring the *Klein* Motions:  Judge Donato is more familiar than is this Court with the underlying action, Judge Donato has been actively managing discovery in *Klein*, dozens of non-party subpoenas have been served in *Klein*, and there is a protective order in *Klein* permitting Meta's in-house counsel to access highly confidential information.  There is no principled reason for Meta to request transfer of only the *FTC* Motions, and not the *Klein* Motions.  Meta's reasons for seeking transfer of the *FTC* Motions are purely tactical.  One such tactical reason may be that Meta believes Judge Boasberg will be more likely to rule in Meta's favor. Another tactical reason may be that moving some of its discovery requests to another district allows Meta to obscure the crushing overall burden imposed by its requests— Meta hopes that no single judge will evaluate the holistic burden that its requests impose on Snap.  It matters not which reason is Meta's actual reason.  The point is that Meta's proffered reasons are pretextual and should be heavily discounted.

None of Meta's three proffered arguments establishes an exceptional circumstance.

*First*, transfer will not "avoid inconsistent rulings" with the FTC's subpoena in the *FTC* action.  Memo at 6-7.  This argument is backfilling.  Meta requested Snap's consent to its motion to transfer on July 1, 2022.  *FTC* Subpoena Dkt. 40-8.  The FTC did not serve a subpoena on Snap until nearly three weeks later, on July 20, 2022. *FTC* Subpoena Dkt. 1-33 at 1.  Thus, Meta fabricated this argument after the fact to justify its forum shopping.  Meta's argument is also speculative, as it is based on purely hypothetical disputes that are unlikely to materialize.  *See Woods ex rel. United States v. SouthernCare, Inc.*, 303 F.R.D. 405, 408-09 (N.D. Ala. 2014) (denying motion to transfer because "[t]he risk of overlapping future rulings, in the name of judicial economy or otherwise, does not constitute an exceptional circumstance").

Snap does not have any current discovery dispute with the FTC, and the FTC's subpoena is unlikely to be litigated, given that the FTC narrowed its subpoena far more than Meta has, *FTC* Joint Stip. at 74, and in turn Snap intends to search for documents in response to all the FTC's priority requests. By contrast, transfer increases the risk of inconsistent rulings on the *FTC* and *Klein* Motions, for the reasons explained below. *See* Argument § II below.

Nor will transfer "avoid inconsistent rulings" on subpoenas issued to other non-parties in the *FTC* action. Memo at 6-7. For starters, it is telling that Meta assumes it is so likely to litigate so many of the boilerplate subpoenas it served on "over 100 other nonparties," *id.* at 6, that it will need the District of Columbia to serve as a clearinghouse.[3] Meta created the problem it now asserts to support its motion; had Meta served more reasonable subpoenas, it would not have to fear litigating so many of them. Moreover, the precedential value of this Court deciding the *FTC* and *Klein* Motions on Meta's negotiations with other non-parties would be limited because so many of those non-parties are so differently situated. For example, Meta served subpoenas on Oracle (a diversified software company), Reddit (a discussion website), Match Group (a dating app developer), and Dispo (a photo-sharing app with 25 employees).[4] There is no reason to believe these non-parties would all have equivalent discovery burdens or confidentiality concerns, and they should not have received identical or nearly identical subpoenas. Again, Meta's purported concern about inconsistent rulings is pretextual. If Meta were truly concerned about reducing the risk of inconsistent rulings, it would have sought transfer of the *Klein* Motions to

---

[3] Indeed, the fact that Meta fears "inconsistent rulings" across subpoenas issued to more than 100 different non-parties underscores that Meta made no effort to tailor its subpoenas to the individual targeted non-parties.

[4] *See FTC* Subpoena Dkt. 1-12; Taylor Hatmaker, "Meta subpoenaed tiny rival Dispo to prove it isn't a monopoly," TechCrunch, https://techcrunch.com/2022/04/11/meta-dispo-ftc-case-subpoena/.

the Northern District of California, where Meta has also served dozens of subpoenas. *See Klein v. Meta*, Case No. 3:20-cv-08570-JD (N.D. Cal.), Dkt. 319 at 4.

Further, Judge Boasberg's "familiar[ity] with the *FTC* case" is not a reason to split up the Snap-related cases. Memo at 7-8. The issuing court is always more familiar with the underlying action than the compliance court, and yet Rule 45(f) requires "exceptional circumstances" to warrant transfer. Familiarity "cannot be what Congress meant when it required a finding of exceptional circumstances, otherwise the exception would swallow the rule." *Isola USA Corp. v. Taiwan Union Tech. Corp.*, 2015 U.S. Dist. LEXIS 140416, at *10 (D. Mass. June 18, 2015) (recommending denial of motion to transfer), *report & recommendation adopted*, 2015 U.S. Dist. LEXIS 142797 (D. Mass. Aug. 27, 2015). In any event, Meta has surely included enough background in the 258 pages of Joint Stipulations filed by the parties to facilitate this Court's understanding of the parties' dispute.

Nor will this Court hearing the Snap-related cases together "disrupt[] Judge Boasberg's management of" the *FTC* action. Memo at 8. Although Meta does not explain this point, *see id.*, its cited cases are clearly distinguishable. The "disruption" referenced in both cases Meta cites concerned the deadline for fact discovery in the underlying actions. *See Bell v. ATH Holding Co., LLC*, 2018 U.S. Dist. LEXIS 117507, at *16 (E.D. Pa. July 16, 2018) ("Participants demonstrated a risk of disruption . . . because the fact discovery deadline in the underlying litigation has passed."); *Le v. Zuffa, LLC*, 2017 WL 11632246, at *3 (C.D. Cal. Mar. 17, 2017) ("The fact discovery cut-off of May 1, 2017 is fast-approaching."). Here, the fact discovery deadlines in the *FTC* and *Klein* actions are many months away, and there is no risk that this Court's ruling would disrupt those deadlines. *See FTC* Subpoena Dkt. 1-16 ¶ 4; *Klein* Subpoena Dkt. 1-32 at 1004.

*Second*, contrary to Meta's argument, Memo at 8-10, Snap has a very strong interest in local resolution of the *FTC* and *Klein* Motions. As explained below, this Court is the only court that can hear both sets of motions together and balance the

overall burden that Snap will face from Meta's subpoenas. If this Court transfers the *FTC* Motions, non-party Snap will have to litigate in two courts and face the possibility of inconsistent rulings. *See* Argument § II below. Further, even if Snap had no interest in local resolution (which it does), "[t]he lack of a burden imposed on the nonparty by transfer is not in itself an exceptional circumstance and is insufficient to warrant transfer." *Woods*, 303 F.R.D. at 407; *see Isola*, 2015 U.S. Dist. LEXIS 140416, at *11 (explaining that there is no "'Fortune 500' exception where any large and successful business would lose the protections of Rule 45").

*Third*, the existence of Judge Boasberg's two-sentence ruling on a case-wide protective order regarding highly confidential information, *Klein* Subpoena Dkt. 1-16, is not an exceptional circumstance. Judge Boasberg did not decide the same issue presented to this Court. He considered whether *all* non-parties should be permitted to designate highly confidential material as being limited to "outside counsel eyes' only"; he did not consider whether the *Snap* information that Meta demands in its subpoenas, in particular, should be entitled to specific protective conditions. In fact, Judge Boasberg could not have considered in his March 22, 2022 ruling the specific issues raised before this Court. Snap had not even served its responses and objections by that date. *See FTC* Subpoena Dkt. 1-6. It was not until July 1, 2022 when Meta unilaterally declared that the parties were at an impasse that it was clear what Snap material Meta was going to insist on receiving. *See FTC* Subpoena Dkt. 40-8. As such, Snap's request for an "outside counsel eyes' only" condition is not a belated "motion to reconsider." Memo at 10; *see In re Bestwall LLC*, 2021 U.S. Dist. LEXIS 102452, at *14-15 (D. Del. June 1, 2021) (denying transfer and rejecting attempt "to paint the Motion to Quash as an improper collateral attack on the Issuing Court's March 24 Order" because "[a]ny motion seeking to quash or modify a subpoena must . . . be brought in the district of compliance").[5]

---

[5] Plaintiff's cited case is inapplicable. Memo at 10. *Olson v. Sprint Spectrum L.P.*, 2008 WL 11506695, at *2 (W.D. Wash. Apr. 16, 2008) explained that it would be "truly radical" to allow "any class plaintiff who receives unequivocal

Nor is Snap's request "untimely," Memo at 10, as Snap asserted its confidentiality objection repeatedly in its responses and objections to Meta's subpoenas. *See generally FTC* Subpoena Dkt. 1-6. This Court clearly has authority to grant Snap's request for an "outside counsel eyes' only" condition, as Rule 45 expressly provides that "the court *for the district where compliance is required* may" "order . . . production under specified conditions." Fed. R. Civ. P. 45(d)(3) (emphasis added); *see In re Subpoenas to Glob. Music Rights*, 2019 U.S. Dist. LEXIS 235809, at *1 n.1, *6-7 (C.D. Cal. Jan. 18, 2019) (denying motion to transfer—even though non-party's motion to quash sought revisions "to the existing protective order" in the underlying action—because "the Motion [to quash] is properly before this Court" as "the Subpoenas seek compliance in this district").[6]

Additionally, while Snap's request for an "outside counsel eyes' only" condition is very important to Snap, the issue is only one of many issues raised by the *FTC* and *Klein* Motions. The Court should not allow this one issue to overshadow the others.

---

notice, rightly or wrongly, that their claims will be extinguished by a settlement agreement, and yet chooses *not* to opt out of the settlement class or file an objection, [to] thereafter raise their objections to the agreement in a different court when one party seeks to enforce it." Rule 45(f)—which expressly requires that Snap move in this Court—was not at issue in *Olson*.

[6] Meta wrongly argues that Snap's request for an "outside counsel eyes' only" condition is "an end-run around the Protective Order itself, which clearly provides that Snap had ten days after . . . receiv[ing] the Order[] to seek additional protections from Judge Boasberg." Memo at 10. *First*, the cited provision refers to "Investigation Materials" (that is, documents produced during the FTC's investigation of Meta), rather than "Litigation Materials" (that is, documents produced in the *FTC* action). *Second*, Meta misreads the provision, which states that if a non-party objects within ten days, then "the Investigation Materials for which additional protection has been sought will not be provided to other Persons, aside from outside counsel, until the Court has ruled." *See FTC* Subpoena Dkt. 1-24 § B.3. The provision ensures that non-parties' Investigation Materials are protected if they object within ten days; it does not state that waiver is the penalty if they do not. Indeed, elsewhere the protective order makes clear that "[n]othing in this Order limits . . . a Protected Person from[] seeking . . . further or additional protections of any of its materials." *Id.* § I.1.

---

14

Finally, contrary to Meta's argument, Memo at 11, Judge Boasberg's "familiar[ity] with the protective order" is not a reason why he should decide the *FTC* Motions.  The protective order is only 27 pages long; anyone can become familiar with it in less than an hour.

Because Meta cannot meet its burden to prove exceptional circumstances, the Court need not go further and should deny Meta's motion to transfer for this reason alone.

## II.     THE BURDEN TO THE JUDICIARY AND SNAP FROM TRANSFERING OUTWEIGHS ANY PURPORTEDLY EXCEPTIONAL CIRCUMSTANCES.

Even if the Court finds exceptional circumstances favoring transfer, the Court should still deny Meta's motion.  This Court is currently scheduled to decide a motion to compel and a motion to quash concerning Meta's subpoena in *FTC*, as well as a motion to compel and a motion to quash concerning Meta's subpoena in *Klein*.  The issues raised in these four motions overlap heavily.  Indeed, both parties copied and pasted entire sections of one Joint Stipulations into the other.  The only reason there are two cases before this Court instead of one is that Meta insisted on splitting up its requests this way.  *See* Background § C above.  The Court should decide the motions pending in the related cases together for two reasons.

*First*, splitting up the related cases would be inefficient.  If the *FTC* and *Klein* Motions remain before this Court, only one court will have to rule on the dispute between Meta and Snap, and non-party Snap will have to litigate in only one court. On the other hand, if the *FTC* Motions are transferred, two courts will have to rule on the dispute between Meta and Snap, and Snap will have to litigate in two courts.  Thus, transferring the *FTC* Motions would waste judicial and party resources.  *See, e.g.*, *CMB Expert, LLC v. Atteberry*, 2014 U.S. Dist. LEXIS 72029, at *4-5 (N.D. Tex. May 27, 2014) (denying motion to transfer because "the parties have agreed to consolidate before this Court the only other subpoena-related action cited by either

15

party" and complexity of underlying action was not an "exceptional circumstance[] warranting a Rule 45(f) transfer"); *Kuznyetsov v. W. Penn Allegheny Health Sys. (In re Am. Nurses Ass'n)*, 788 F. Supp. 2d 444, 446-47 (D. Md. 2011) (denying motion to transfer because the court had already "ruled on a related subpoena dispute" and the non-party "has been served with [other] similar subpoenas issued by this Court").

Meta counters that this Court hearing both related cases "would yield no efficiencies for Snap" because "the motions 'concern distinct sets of documents and are different in subject matter and scope.'"  Memo at 9.  Meta is talking out of both sides of its mouth.  Its entire justification for demanding production in *Klein* of all documents produced by Snap in *FTC* is that "[d]ocuments produced in the *FTC* action regarding Snap's view of the competitive landscape and its competition with Meta specifically are relevant, and go to the core of the [*Klein*] case."  *Klein* Joint Stip. at 79-80.  The documents and subject matter at issue in the underlying actions overlap heavily, *see* Background §§ B, C above, which is precisely why Meta demands cross-production.  The Court should not allow Meta to have it both ways.  Just as the overlap between the underlying actions justifies cross-production, it justifies motion practice coordinated by the same court—this Court—the court in the district where compliance with the subpoenas is to be had.[7]

*Second*, splitting up the related cases would be unfair to Snap and risks inconsistent rulings.  As noted, the issues in the related cases overlap heavily.  It would be unfair for one court to order discovery and another court to deny discovery

_____

[7] Meta's cited cases are inapposite.  Memo at 9-10.  In *Bright House Networks, LLC v. MarkMonitor, Inc.*, 2020 WL 4464882, at *3 (N.D. Cal. Aug. 3, 2020), the subpoena actions "were before . . . different judge[s]" in the Northern District of California and "the movants in the three [subpoena] cases [were] three separate entities."  In *Bell*, Vanguard, a non-party to the underlying action, argued that the Eastern District of Pennsylvania "could provide a single forum for resolving discovery disputes involving Vanguard, in its role as recordkeeper for retirement plans, in unrelated actions pending across the country"—an obvious overreach.  2018 U.S. Dist. LEXIS 117507, at *22.  Here, by contrast, the *FTC* and *Klein* Motions overlap heavily, are before the same judge, involve the same movants, and Meta seeks cross-production.  The efficiencies achievable here could not have been achieved in *Bright House* or *Bell*.

SNAP'S OPPOSITION TO META'S
MOTION TO TRANSFER

on the same issues involving the same parties. Moreover, the unfairness uniquely disadvantages Snap because Meta will get two bites at the apple. If this Court denies discovery, the District of Columbia could essentially overrule this Court by granting the same discovery. Snap should not have to win twice to protect itself from burdens inappropriate to impose on a non-party. *See, e.g.*, *Atteberry*, 2014 U.S. Dist. LEXIS 72029, at *4-5; *Kuznyetsov*, 788 F. Supp. 2d at 446-47; *cf. Sines v. Darling Ingredients, Inc.*, 2022 U.S. Dist. LEXIS 88397, at *68 (D.N.M. May 17, 2022) (denying transfer where party requested transfer of motion to compel only if the court was inclined to rule against it on the motion to compel).

These burdens to the judiciary and Snap arise from real disputes currently being litigated. By contrast, Meta's purported benefits of transferring are pretextual and based on entirely hypothetical disputes that may never materialize. *See* Argument § I above. Inefficiencies and inconsistent rulings are accordingly more likely to occur if the *FTC* Motions are transferred. For these reasons, even if Meta had established exceptional circumstances (which it has not), the burden imposed on the judiciary and Snap from transferring outweighs those circumstances.

## CONCLUSION

The Court should deny Meta's motion to transfer for the foregoing reasons.

DATED: August 23, 2022          Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Justina K. Sessions*
Justina K. Sessions, State Bar No. 270914
Email: jsessions@wsgr.com
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2099

*Counsel for Cross-Movant and
Respondent Snap Inc.*

17