Justina K. Sessions, State Bar No. 270914
Email: jsessions@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2099

*Counsel for Cross-Movant and
Respondent Snap Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| META PLATFORMS, INC.,<br><br>Movant,<br><br>v.<br><br>SNAP INC.,<br><br>Cross-Movant and Respondent. | Case No. 2:22-mc-00146-PA-AGR<br><br>**SNAP'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO META'S MOTION TO COMPEL SNAP TO PRODUCE DOCUMENTS AND IN SUPPORT OF SNAP'S CROSS-MOTION TO QUASH SUBPOENAS**<br><br>Underlying action in the United States District Court for the District of Columbia, No. 1:20-cv-03590-JEB<br><br>Fact Discovery Cutoff: May 22, 2023<br>Expert Discovery Cutoff: January 5, 2024<br>Pretrial Conference and Trial Date: TBD<br><br>Hearing Date: September 13, 2022<br>Hearing Time: 11 a.m.<br>Magistrate Judge Alicia G. Rosenberg<br><br>DISCOVERY MATTER |

Under Local Civil Rule 37-2.3, Snap submits this Supplemental Memorandum. Because the parties had an opportunity to respond to each other's positions in the Joint Stipulations, Snap stands on its prior arguments and focuses here on two more points.

## I. THE CUMULATIVE BURDEN OF THE SUBPOENAS OUTWEIGHS THE INCREMENTAL RELEVANCE OF MORE DOUCMENTS.

In evaluating the motions to quash and compel, the Court should first decide whether to assess the cumulative burden imposed by the Subpoenas or to parse each request by determining whether each request is reasonable standing alone.

The proper approach is to assess cumulative burden first; only if the Court determines that the Subpoenas as a whole are not unduly burdensome should the Court parse each request to determine if the incremental burden of each request is justified by the relevance of the material sought. The text of Rules 26 and 45 supports this order of decision. A motion to quash asks the Court whether "a *subpoena*"—not only each individual request—"subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). And courts are to prohibit discovery requests that are "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). Case law also supports this order. *See, e.g.*, *Intermec Techs. Corp. v. Palm, Inc.*, 2009 U.S. Dist. LEXIS 132759, at *7 (N.D. Cal. May 15, 2009) (quashing subpoena in its entirety without parsing each request); *Baxalta Inc. v. Genentech, Inc.*, 2016 WL 11529803, at *8 (N.D. Cal. Aug. 9, 2016) (same). Finally, this order reflects reality: the cumulative burden is what Snap actually faces, and the forest should not be missed for the trees. If an issuing party were required to justify only each request individually, it could easily game the system. For example, a party could serve two subpoenas in two closely related cases, demand that all documents produced in one case be produced in the other, and split its demands into 138 requests (or more than 150 requests with subparts), thereby obfuscating the *overall* burden by splitting the burden into enough constituent pieces that no one piece, standing alone, seems unduly burdensome. (To be clear, several of Meta's requests, even individually, are unduly burdensome. Other

1

SNAP'S SUPPLEMENTAL MEMORANDUM                                    CASE No. 2:22-mc-00146-PA-AGR

requests may seem more reasonable in isolation, but are unduly burdensome when viewed with all other requests, as part of a larger whole.)

If the Court agrees that Meta's Subpoenas as a whole impose an undue burden, then the appropriate remedy is to quash the Subpoenas in their entirety. Quashing a subpoena is not "radical" or "extraordinary." *FTC* Joint Stip. at 3, 54. It is common. *See, e.g.*, *Intermec*, 2009 U.S. Dist. LEXIS 132759, at *7 (quashing subpoena); *Baxalta*, 2016 WL 11529803, at *8 (same); *see also In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1044 (N.D. Cal. 2016) (denying discovery application in full). Rule 45 expressly permits the remedy. Fed. R. Civ. P. 45(d)(3)(A)(iv) ("[T]he court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."). Quashing is a very sensible remedy when a subpoena as a whole is unduly burdensome. In the short-term, it saves the Court from having to parse and re-draft scores of requests. In the long-term, it preserves resources by incentivizing parties to draft reasonable subpoenas in the first place. That it would be a "waste [of] time and money for Meta to go back and issue a new subpoena," *FTC* Joint Stip. at 54, is exactly the point. If issuing parties know that unreasonable subpoenas will be quashed, they will not serve them in the first place. Instead, they will adhere to their obligation to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

In this case, the cumulative burden imposed by the Subpoenas is enormous. Meta is demanding email searches for dozens of custodians for more than a decade, *FTC* Joint Stip. at 65-67; curated sets of "documents sufficient to show" that require interviewing dozens of individuals in at least ten different departments, *id.* at 67-68; and all manner of data that would take months to generate, *id.* at 68-70.

This cumulative burden is "undue" because it outweighs the marginal benefit of the documents demanded by Meta. The incremental relevance of those documents over the documents offered by Snap is minimal. The primary reasons Meta seeks discovery from Snap are to rebut allegations of market definition and exclusionary

2

conduct. *See FTC* Joint Stip. at 1-2. Snap's proposal is designed to provide the Company's views on these issues. Snap offered to produce, among other documents, its public financial statements (which describe the competitive landscape), its executive and board presentations regarding competition and Meta's offer to acquire Snap, and "Project Voldemort" documents. *Id.* at 35-36. Snap should not have to incur the burden of searching for documents that might shed light on market definition or exclusionary conduct from every possible angle when Snap has offered to produce documents that directly address these issues.

Meta's arguments for custodial searches are also unconvincing. Meta does not need "the data and analyses underlying [Snap's] presentations and summaries." *FTC* Joint Stip. at 89-90. Snap's public statements and board presentations will reflect its views of competition. The rigor with which Snap arrived at those views is not at issue in the underlying cases. Nor does Meta need Snap's "day-to-day analyses" of competition. *Id.* at 90. Snap's public statements and board presentations directly represent the Company's views, and reveal the evolution of its views over time.

Finally, quashing will not prejudice Meta. If the Court explains that discovery like Snap's proposal is appropriate, Meta can serve subpoenas resembling Snap's proposal. Meta could supplement with a few targeted requests. Then Meta and Snap can work from a reasonable baseline. But the Court should not do Meta's homework for them and re-draft Meta's overly broad and unduly burdensome subpoenas.

## II. META'S IN-HOUSE COUNSEL DO NOT HAVE A SUBSTANTIAL NEED FOR SNAP'S MOST CONFIDENTIAL INFORMATION.

Meta's failure to prove it has a "substantial need" for Snap's most confidential information is an independent basis to quash the Subpoenas. *FTC* Joint Stip. at 75-79. For example, Meta seeks "all documents and data from third parties assessing Snap's privacy practices and policies." *FTC* Joint Stip. at 133. Privacy and security audits commissioned by Snap would reveal Snap's competitive strengths and weaknesses and would therefore be highly sensitive. Yet Meta does not have a

3

substantial need for such documents because Snap offered to produce its privacy policies, which Meta can use to conduct its own assessments. Moreover, Meta has presumably commissioned audits on which Meta could rely in the underlying actions.

If, however, the Court orders production, the Court should order that Meta cannot disclose Snap's most confidential information to Meta's in-house counsel. When a subpoena seeks "confidential research, development, or commercial information," "the court may, instead of quashing or modifying a subpoena, order . . . production under specified conditions if the serving party . . . shows a substantial need for . . . material that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3). The Subpoenas seek a slew of documents and data concerning Snap's evaluation of competition and competitiveness, product plans, efforts to attract users, opportunities to raise capital, pricing methods, advertising customers, and technical development and capabilities. *FTC* Joint Stip. at 75-77. Even if Meta could prove that its *outside* counsel have a substantial need for such information—which is doubtful—it cannot prove that its *in-house* counsel have a substantial need. The five large law firms representing Meta in the underlying cases can surely protect Meta's interests without disclosing Snap's most sensitive information to Meta employees.

Meta opposes an "outside counsel eyes' only" condition in part because the court presiding over *FTC* decided not to include such a condition in the protective order governing that action. This Court clearly has authority to order an "outside counsel eyes' only" condition to protect Snap. Rule 45 provides that "the court *for the district where compliance is required* may" "order . . . production under specified conditions," Fed. R. Civ. P. 45(d)(3) (emphasis added), even though protective orders are routinely entered by issuing courts to govern underlying litigation. Further, the court presiding over *FTC* did not consider the question faced by this Court. That court considered whether Meta's in-house counsel should be permitted to access *any* highly confidential information of *any* party or non-party, and answered affirmatively in a

SNAP'S SUPPLEMENTAL MEMORANDUM     CASE NO. 2:22-mc-00146-PA-AGR

two-sentence ruling. Dkt. 1-13. That court did not consider if Snap's information, in particular, should be entitled to special protection.[1]

Snap is specially situated among non-parties. Snap is the only company that all parties to the underlying cases agree is a direct competitor to Meta in at least one relevant market. *See Klein* Joint Stip. at 1; *FTC* Joint Stip. at 1. Snap has also been subject to Meta's allegedly exclusionary conduct. Meta reportedly obtained Snap's usage data covertly through a spyware app, Onavo. Meta's CEO threatened to copy Snap's products unless Snap let Meta buy it. Meta then admittedly copied Snapchat's features. *FTC* Joint Stip. at 6. If these reasons can support additional discovery of Snap's most sensitive information, they should also support additional protection of Snap's most sensitive information. All these reasons, not simply "'status as in-house counsel . . . alone,'" *id.* at 170, justify additional protection for Snap. And, even if the probability of inadvertent disclosure were low, the value of Snap's information as Meta's direct (and allegedly only remaining) competitor is so important that an "outside counsel eyes' only" condition is merited. For all the reasons that Meta argues Snap is "centrally important," *FTC* Joint Stip. at 1, to the underlying cases (a conclusion with which Snap disagrees), Snap is entitled to special protection.

Finally, Meta wrongly argues "chaos would ensue" if this Court ordered an "outside counsel eyes' only" condition for Snap. *Klein* Joint Stip. at 82. If the Court orders this condition, only a small fraction of the discovery material in the underlying cases would be inaccessible to Meta's in-house counsel. And if other non-parties also requested "outside counsel eyes' only" conditions for their information, their requests would also be evaluated on their individual merits, as Rule 45(d)(3) requires.

---

[1] Contrary to Meta's suggestion, *Klein* Joint Stip. at 81-82, the court presiding over *Klein* did not consider a request for an "outside counsel eyes' only" condition. That court entered a *stipulated* order presented by the parties. *See Meta v. Snap*, Case No. 2:22-mc-00147-PA-AGR (N.D. Cal.), Dkt. 1-21.

DATED: August 30, 2022    Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Justina K. Sessions*
Justina K. Sessions, State Bar No. 270914
Email: jsessions@wsgr.com
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2099

*Counsel for Cross-Movant and Respondent Snap Inc.*