CATALINA JOOS VERGARA (SBN 223775)
cvergara@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071-2899
Telephone:  +1 213 430 6000
Facsimile:   +1 213 430 6407

KEVIN B. HUFF (admitted *pro hac vice*)
khuff@kellogghansen.com
KELLOGG, HANSEN, TODD, FIGEL &
   FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone:  +1 202 326 7900
Facsimile:   +1 202 326 7999
*(additional counsel listed on signature page)*

Attorneys for Moving Party
Meta Platforms, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| META PLATFORMS, INC.,<br><br>            Moving Party,<br><br>     v.<br><br>SNAP INC.,<br><br>            Responding Party. | **Misc. Case No.<br>2:22-mc-00146-PA-AGRx**<br><br>Underlying action in United States District Court for the District of Columbia, No. 1:20-cv-03590-JEB<br><br>**META PLATFORMS, INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL AND OPPOSITION TO SNAP INC.'S CROSS-MOTION TO QUASH**<br><br>Judge: Hon. Alicia G. Rosenberg<br>Hearing Date: September 13, 2022<br>Time: 11:00 a.m.<br>Location: Courtroom 550<br>Roybal Federal Building and United States Courthouse |

**[REDACTED VERSION OF DOCUMENT PROPOSED
TO BE FILED UNDER SEAL]**

Meta seeks relevant and necessary discovery from Snap – the only significant competitor the FTC alleges (wrongly) that Meta has. While "recogniz[ing] that it will need to provide some additional discovery" here, *FTC* Joint Statement ("J.S.") at 60, Dkt. 1-1, Snap has stonewalled and delayed. Snap provided a take-it-or-leave-it offer to produce a handful of documents, subject to numerous inappropriate conditions, including a new protective order and Meta paying its fees. This offer did not include the vast majority of documents Meta needs to defend itself, and included no customary custodial searches for relevant emails and documents.

While not a party to this litigation, Snap is interested in its outcome, and its steadfast refusal to cooperate in discovery only bolsters that fact. Snap ████ ████████████, J.S. at 44, and for years has been ████████████ ████████████████████████████████████████ ███████████████ Decl. of Ana N. Paul (Aug. 30, 2022), Ex. AG ████████ ████████████████████████████████████████ ████. If Snap's interest was in doubt, its *prompt* compliance with the FTC's extensive subpoena erases it. Snap Transfer Opp. at 11, Dkt. 50.

The Court should not quash the subpoena and send the parties back to square one. J.S. 54-60. Meta served the subpoena six months ago, and already dropped 23 requests and narrowed 25 others. The remaining requests are targeted and necessary. The Court should order Snap to produce the highly relevant documents Meta seeks.

**I.   Snap Has Not Shown That Meta Seeks Its Trade Secrets**

Snap argues (at 75) that the subpoena should be quashed because Meta has not shown a substantial need for Snap's most confidential information. The "substantial need" standard applies only if Snap carries its initial burden of making a "strong showing" that the requests seek actual "trade secrets" or "confidential . . . commercial information" (referred to herein as "trade secrets"). Fed. R. Civ. P. 45(d)(3)(B)(i); *Nguyen v. Lotus By Johnny Dung Inc.*, 2019 WL 4570032, at *4 (C.D. Cal. Apr. 12, 2019). Snap must establish (1) the information is a trade secret,

and (2) its disclosure would *presently harm* Snap. *See RG Abrams Ins. v. Law Offices of C.R. Abrams*, 2021 WL 4974618, at *8 (C.D. Cal. July 14, 2021).

Snap "must first *demonstrate by competent evidence*" – i.e., affidavits or declarations, not just "general assertions" – the information is a trade secret. *Heredia v. Sunrise Senior Living LLC*, 2020 WL 3108699, at *4-5 (C.D. Cal. Jan. 31, 2020) (emphasis added). Courts routinely reject generic invocations of trade secrets without any evidence substantiating the claim. *See, e.g., Nguyen*, 2019 WL 4570032, at *4; *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 683 (C.D. Cal. 2009) (rejecting trade-secret claim because "defendant has not presented any declarations from its officers or employees supporting its claim that the information sought . . . is a 'trade secret'"); *Hill v. Eddie Bauer*, 242 F.R.D. 556, 561-62 (C.D. Cal. 2007) (same); *Heredia*, 2020 WL 3108699, at *4 (same); *RG Abrams*, 2021 WL 4974618, at *8 (same).[1]

Snap asserts trade secret status for only two of 37 requests (RFPs 36 and 23(c)), and has not substantiated those assertions.[2] Snap's conclusory claims that the subpoena generally seeks trade secrets fail to make a "strong showing" that any *specific* request seeks any *specific* trade-secret information. It has offered *no* competent evidence supporting its claim of trade secrets – despite its submission of declarations (flawed for other reasons) regarding burden. *See Eddie Bauer*, 242 F.R.D. at 562 n.7 (failure to provide trade-secret evidence "particularly glaring since [party] filed several declarations . . . [regarding] the burden[]" of requests).

Snap instead argues (at 75) it is exempt from *proving* trade-secret status

---

[1] Countless other courts do so as well. *See, e.g., In re Ambercroft Trading Ltd.*, 2018 WL 4773187, at *9 (N.D. Cal. Oct. 3, 2018); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2010 WL 11613859, at *3 (D.D.C. Sept. 9, 2010).

[2] Snap identifies, in bullet form in an introduction section, five requests (RFPs 4, 7, 20, 23, 26) that (supposedly) "obviously" contain trade secrets, but makes no request-specific arguments. It never includes *any* RFP-23-specific discussion in the argument section – thus waiving any challenge (on any topic) to RFP 23.

- 2 -

META'S SUPPLEMENTAL MEM. –
MISC. CASE NO.
2:22-MC-00146-PA-AGRx

1  because it is "obvious" "Meta seeks confidential mater [sic]." This is a conclusory
2  argument courts routinely reject. *E.g.*, *Nat'l Acad.*, 256 F.R.D. at 683 ("Without any
3  declarations to support its confidentiality claim, the Court cannot simply assume
4  defendant keeps this information confidential."); *U.S. Interloc Matting. v. Macro*
5  *Plastics*, 2017 WL 9565569, at *3 (E.D. Cal. Nov. 14, 2017) ("vague and
6  conclusory allegations . . . do not provide any specific argument or evidence to
7  allow the court to determine . . . if . . . documents contain trade secrets"). Indeed, in
8  all the cases Snap cites (at 76-77) to support its position that the material requested
9  is "obviously" confidential, the party alleging trade secrets provided declarations
10 from employees explaining the confidential nature of the information requested.
11     Even *if* some requests implicate trade secrets (something Snap has not
12 shown), it is clear most do not. For example, responding to Meta's request for
13 information 10 and 8 years old would inflict no *present* harm to Snap. *See*, *e.g.*, *In*
14 *re McKesson Gov't Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 602-03
15 (N.D. Cal. 2009) (no trade secret protection for five-year-old pricing information);
16 *United States v. Exxon Corp.*, 94 F.R.D. 250, 251-52 (D.D.C. 1981) (similar). It is
17 Snap's job, not the Court's, to identify which requests, and which specific
18 documents in response, implicate trade secrets. It has not done so.

19 **II.   Meta Has Substantial Need for These Highly Relevant Documents**
20     Even if Snap had identified specific trade secrets (it has not), Meta has
21 substantial need for Snap's assessments of competition with Meta and others for
22 user time and attention. This discovery is critical to Meta's defense that there is no
23 "industry or public recognition" of the alleged market. *Brown Shoe Co. v. United*
24 *States*, 370 U.S. 294, 325 (1962). The FTC alleges Snap is Meta's only significant
25 PSNS competitor. Snap's internal documents on who it competes with are critical to
26 dispute this. If these documents demonstrate that Snap competes with not just Meta,
27 but also, for example, TikTok, the FTC's market definition collapses.
28     Snap misconstrues *Brown Shoe*, arguing (at 96) that "[n]one of Meta's

document requests ask for documents recognizing PSNS as a separate economic entity." The FTC invented the PSNS market – as far as Meta is aware, no one in the industry uses the term. Meta necessarily seeks Snap's view of the market *beyond* just the FTC's artificial PSNS construct in order to disprove its existence.

Elsewhere, Snap claims that Meta seeks to "co-opt the Court into drafting discovery." J.S. at 63. Not so. *Before* moving to compel, Meta agreed in writing to narrow its requests, while Snap refused to negotiate (*id.* at 25-26); Meta asks the Court not to "rewrite" its requests (*id.* at 63), but to order Snap to comply with them.

Snap also resists providing customary custodial searches for emails and documents. For example, it argues (at 98) "there is no reason to think that 'informal communications'" found in emails "would be more probative of the *Brown Shoe* 'industry recognition' than the presentations upon which Snap actually bases its decisions." Relevance does not turn on what Snap views as the best evidence; requests are relevant "unless the information sought has no conceivable bearing on the case." *Poturich v. Allstate Ins.*, 2015 WL 12766048, at *2 (C.D. Cal. Aug. 11, 2015). And, email evidence is relevant – courts in antitrust cases consider emails all the time, *see* J.S. at 49 & n.27, 89 (collecting cases), and parties in antitrust cases routinely produce them, *id.* at 58, 88-89 (collecting examples). *See also, e.g.*, *In re EpiPen Mktg., Sales Practice & Antitrust Litig.*, 2018 WL 3240981, at *3 (D. Kan. July 3, 2018) (ordering production of emails that might "reveal direct internal communications not found elsewhere"). The types of candid statements often found in email could be particularly important to understanding Snap's view of the market and competition – particularly in this dynamic technology market, where new developments are often documented in contemporaneous email correspondence.

### III. Snap Has Failed To Prove Any Burden

Snap has not said *anything* about burden for the vast majority of Meta's requests. Snap must support its claim of burden with "affidavits or other evidence showing the exact nature of the burden." *Blagman v. Apple*, 2014 WL 12607841, at

*3 (C.D. Cal. Jan. 6, 2014). "'*Ipse dixit*' and 'counsel's mere say-so' do not suffice." *Doe v. Wesleyan Univ.*, 2021 WL 4704852, at *7 (D. Conn. Oct. 8, 2021).

For 13 requests, Snap simply makes *no* burden argument.[3] For all but four of the rest,[4] Snap offers no proof of its burden, and instead makes only general and conclusory arguments based on its counsel's say-so. For example, Snap's burden arguments for RFPs 1, 60, and 61 state only that "locating and producing such documents would obviously not be burden-free," with no elaboration or citation. J.S. at 115. That is insufficient. *See State Farm Mut. Auto. Ins. v. Elite Health Ctrs., Inc.*, 364 F. Supp. 3d 758, 766-67 (E.D. Mich. 2018); *In re Apple iPhone Antitrust Litig.*, 2021 WL 718650, at *2 (N.D. Cal. Feb. 24, 2021).

Snap offers evidence of the alleged burden for only four of Meta's data requests. But as explained, J.S. at 109, 151, those affidavits either fail to establish a significant burden or respond to requests Meta is not making.

Snap tries to overcome its failure to offer specific evidence regarding burden by repeating that the Court must consider the subpoena's "cumulative" burden. But, it is impossible to evaluate the "holistic burden" of Meta's subpoena because Snap made no effort to specify the individual burden of most of the requests, even as Meta narrowed the subpoena. Snap did no work to elaborate its burden, not even attempting to estimate the time and cost to review responsive hits based on its own custodians and search terms. It is no answer to assert (as Snap does) that it would be burdensome to assess burden. *See Stati v. Rep. of Kazakhstan*, 2020 WL 3259244, at *9 (D.D.C. June 5, 2020) (non-party failed to establish burden without "actually conduct[ing] a preliminary search"); *State Farm*, 364 F. Supp. 3d at 767 (party responding should "[b]e prepared to support allegations of undue burden with detailed cost and time calculations, supported by knowledgeable declarations").

---

[3] RFPs 6, 7, 10, 14, 15, 16, 22(a), 23, 36, 43, 47, and 53.

[4] RFPs 1, 2, 4, 9, 12, 13, 18, 19, 20, 21, 26, 38, 39, 40, 41, 48, 49, 58, 60, 61.

| | | |
|---|---|---|
| 1 | DATED: August 30, 2022 | Respectfully submitted, |
| 2 | | |
| 3 | | By:   /s/ Catalina Joos Vergara |
| | | Catalina Joos Vergara |
| 4 | | |
| 5 | | Catalina Joos Vergara |
| | | cvergara@omm.com |
| 6 | | O'MELVENY & MYERS LLP |
| | | 400 South Hope Street, 18th Floor |
| 7 | | Los Angeles, California  90071-2899 |
| | | Telephone: +1 213 430 6000 |
| 8 | | Facsimile: +1 213 430 6407 |
| 9 | | |
| 10 | | Kevin B. Huff (admitted *pro hac vice*) |
| | | Kevin D. Horvitz (admitted *pro hac vice*) |
| 11 | | Ana Nikolic Paul (admitted *pro hac vice*) |
| | | Justin B. Berg (admitted *pro hac vice*)* |
| 12 | | khuff@kellogghansen.com |
| | | khorvitz@kellogghansen.com |
| 13 | | apaul@kellogghansen.com |
| | | jberg@kellogghansen.com |
| 14 | | KELLOGG, HANSEN, TODD, |
| | | FIGEL & FREDERICK, P.L.L.C. |
| 15 | | 1615 M Street, N.W., Suite 400 |
| | | Washington, D.C. 20036 |
| 16 | | Telephone: +1 202 326 7900 |
| 17 | | Facsimile:  +1 202 326 7999 |
| | | *Admitted in New York.  Not admitted in |
| 18 | | District of Columbia.  Practice supervised by |
| | | members of the firm. |
| 19 | | |
| 20 | | *Attorneys for Moving Party* |
| | | *Meta Platforms, Inc.* |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |